IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SINDY WEBB, | ) | |
| | ) | CASE NO. 1:14-CV-1246 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | **MEMORANDUM OPINION &** |
| | ) | **ORDER** |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. No. 15).  The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Sindy Webb's ("Plaintiff" or "Webb") applications for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., and for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

## I. PROCEDURAL HISTORY

On September 15, 2008, Webb filed previous applications for Supplemental Security Income benefits and Disability Insurance benefits, alleging disability as of August 2, 2006. (Tr. 44).  The Social Security Administration denied her claim initially and upon reconsideration. (*Id.*).  Upon Plaintiff's request, a hearing was held before administrative law judge ("ALJ") James Dixon. (*Id.*).  ALJ Dixon found that Plaintiff had one past relevant job as a babysitter,

which the vocational expert characterized as medium semi-skilled work. (Tr. 51). Based on VE testimony, the ALJ found that Webb was precluded from performing her past work, but she could perform a significant number of other jobs in the national economy. (*Id.*). Accordingly, ALJ Dixon issued an unfavorable decision finding Plaintiff not disabled on December 17, 2010 (hereinafter the "2010 Disability Determination"). (Tr. 53). The Appeals Counsel denied Plaintiff's request for review on May 2, 2012, making the ALJ's December 17, 2010, decision the final decision of the Commissioner. (Tr. 77).

On January 24, 2011, Webb filed the applications for Supplemental Security Income benefits and Disability Insurance benefits, currently at issue before the Court. (Tr. 17, 124, 126). She alleged that she became disabled on August 2, 2006, due to suffering from diabetes, fibromyalgia, knee problems, arthritis, sleep apnea, anxiety, depression, pain, Mediterranean Fever Disease, high blood pressure, and difficulty walking. (Tr. 150, 197). The Social Security Administration denied her claims initially and upon reconsideration. (Tr. 54, 63).

Upon Plaintiff's request, a hearing was held before ALJ Penny Loucas on December 17, 2012. (Tr. 91, 1162-93). Plaintiff, represented by counsel, appeared and testified before the ALJ. (*Id*). A vocational expert ("VE"), Gene Burkhammer, also appeared and testified. (*Id.*). During the hearing, Plaintiff amended her alleged onset date of disability to April 20, 2011. (Tr. 144, 1166).

On April 18, 2013, the ALJ issued a decision, finding Plaintiff did not qualify for benefits. (Tr. 17-31). After applying the five-step sequential analysis,[1] the ALJ concluded that

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

Plaintiff retained the ability to perform her past work in phone sales, as well as other work existing in significant numbers in the national economy. (*Id.*).

The Appeals Council denied Plaintiff's request for review, making the ALJ's April 18, 2013, determination the final decision of the Commissioner. (Tr. 1-4).  Plaintiff now seeks judicial review of the ALJ's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II.  EVIDENCE

### A.  Personal Background Information

Plaintiff was born on November 3, 1962, was 48-years-old as of the alleged onset date and 51-years-old at the time the ALJ rendered her decision. (Tr. 51).  As a result, Webb was considered a "person closely approaching advanced age" for Social Security purposes. 20 C.F.R. §§ 404.1563(d), 416.963(d).  The ALJ found that Plaintiff had past relevant work as a babysitter

---

(1)  If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

(2)  If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3)  If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)  If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)  Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

and in phone sales. (Tr. 29). Plaintiff disputes that her work in phone sales qualifies as past relevant work.

  **B.  Medical Evidence**

    **1.  Physical impairments**

In December 2010, Webb met with primary care physician Constance Magoulias, M.D., to establish care. (Tr. 709).  Dr. Magoulias diagnosed major depressive disorder with anxiety and agoraphobia, fibromyalgia, and obesity. (Tr. 711).  She prescribed Valium, Percocet, and water exercise. (*Id.*).

In April 2011, Webb reported to Ninon Pachikara, M.D., that her obstructive sleep apnea was much improved since starting CPAP therapy.  She weighed 383 pounds. (Tr. 1021).  Also in April 2011, Plaintiff treated with podiatrist Lisa Roth, D.P.M., for mycotic toenails that caused pressure and pain upon ambulation. (Tr. 817).  Dr. Roth noted that Plaintiff used a wheelchair on a regular basis, but observed that during the visit Plaintiff was ambulatory. (*Id.*).  During May 2011, Carol Crowe, M.D., diagnosed Plaintiff with Familial Mediterranean Fever. (Tr. 831-32).

On June 22, 2011, Plaintiff treated with Dr. Magoulias and reported that she had been attending weight management, participating in water aerobics, and leaving the house more often. (Tr. 990).  She had lost 15 pounds.  At the time, Webb weighed 377 pounds.  Plaintiff complained of chronic back pain, knee pain, and fibromyalgia.  She requested an electric wheelchair because her husband could not push her in a manual chair. (*Id.*).  Dr. Magoulias opined that Webb's diabetes was under control, but her sugars were high. (Tr. 991). The doctor recommended that Plaintiff continue with weight management, refilled her prescription for Percocet, and referred her to a clinic for her wheelchair request. (*Id.*).

During the June 2011 visit, Dr. Magoulias completed a medical source statement describing Plaintiff's physical abilities. (Tr. 229-30).  The doctor opined that Webb could not lift or carry any weight due to her obesity and use of a wheelchair; could not stand or walk during an eight-hour workday; could only walk short distances at home and needed a wheelchair outside her home; could sit for eight hours in two hour increments; could rarely or never perform postural activities; could rarely or never reach, push, or pull due to pain and fibromyalgia; must avoid heights and moving machinery; and needed additional rest breaks during the workday. The doctor indicated that she had ordered a motorized wheelchair for Plaintiff. (*Id.*).

On June 30, 2011, Plaintiff attended weight management group counseling with James Yokley, Ph.D. (Tr. 981).  She had a good week during which she was eating and sleeping well and had increased her activity level. Dr. Yokley felt that Webb was tolerating group counseling well, responding to positive reinforcement, and her weight condition was amendable to treatment. (*Id.*).

On August 5, 2011, Plaintiff treated with podiatrist Michael Bodman, D.P.M., for her nail condition. (Tr. 910).  Webb tolerated a debridement procedure well, and Dr. Bodman observed that Plaintiff was ambulatory. (*Id.*).

On September 22, 2011, Dr. Magoulias noted that Plaintiff tolerated her diabetes regime well, attended weight management, and planned to apply for gastric bypass surgery. (Tr. 589). The doctor recounted that Plaintiff had cut down her dosage of Valium and was feeling less depressed.  Dr. Magoulias described Plaintiff as "wheelchair bound." (*Id.*).

On September 26, 2011, Plaintiff attended weight loss counseling, reporting that she was having a good week, eating and sleeping well, and maintaining her activity level. (Tr. 974).  That day, Patricia Franta, C.N.P., noted that Plaintiff exercised at the YMCA three times per week,

which she enjoyed and increased her flexibility. (Tr. 967).  She wrote that Webb's degenerative joint disease could be improved with weight loss, and her fibromyalgia and back pain were "stable" with weight loss and water exercise. (Tr. 970).  Plaintiff planned to add a strength training class at the YMCA and remained interested in gastric bypass surgery. (Tr. 971).

During November 2011, Plaintiff returned to Dr. Roth for a nail debridement. (Tr. 550). Dr. Roth observed that Plaintiff regularly used a wheelchair but was ambulatory. (*Id.*).

On December 9, 2011, Webb presented to the emergency room with complaints of low back pain with radiation into the right buttocks, as well as pain and swelling in her left foot. (Tr. 451).  A foot x-ray was normal. (Tr. 452).  She was diagnosed with a lumbar strain and sciatica and a foot contusion. (*Id.*).  She was discharged with a prescription for Neurontin. (Tr. 453).

On December 15, 2011, Plaintiff attended a pre-surgical evaluation for gastric bypass with Samuel Lofton, M.D. (Tr. 434).  Plaintiff weighed 380 pounds with a body mass index ("BMI") of 70.05. (*Id.*).  A physical examination showed no gross or obvious abnormalities in her extremities, no motor deficits, and grossly intact sensation. (Tr. 437).

On December 19, 2011, Plaintiff underwent gastric bypass surgery. (Tr. 512-23).  She was discharged in stable condition on December 22, 2011. (Tr. 513).

On January 1, 2012, state agency reviewing physician Elaine Lewis, M.D., conducted a review of the record. (Tr. 63-71).  Dr. Lewis opined that Plaintiff could lift or carry up to 20 pounds occasionally and ten pounds frequently; stand or walk for a total of four hours in an eight-hour workday; never climb ladders, ropes, or scaffolds; could perform unlimited balancing; could occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl; and must avoid all exposure to hazards. (Tr. 70-71).

On January 3, 2012, Plaintiff attended a follow up appointment with her surgeon Walter Cha, M.D. (Tr. 426).  Dr. Cha wrote that Plaintiff was healing well and was stable.  He also stated that Plaintiff weighed 355 pounds, which was about 25 pounds less than she weighed at her pre-surgical evaluation.  She had a BMI of 65.01. (*Id.*).

During a group weight loss counseling session on January 9, 2012, Plaintiff reported that she was having a good week, ate less than usual, and slept well. (Tr. 418).  By January 10, 2012, Plaintiff weighed 349 pounds with a BMI of 65.01. (Tr. 413).  She was able to walk around her home with a cane and by herself. (*Id.*).

On January 26, 2012, Plaintiff presented to nurse practitioner Franta. (Tr. 395).  Plaintiff weighed 337 pounds with a BMI of 61.71. (*Id.*).  She reported that since the surgery, her stamina had improved, she no longer needed to use a cane in her home, and she was not using a wheelchair. (Tr. 396).  Additionally, Dr. Cha had allowed her to resume water aerobics. Nurse Franta reported that Percocet provided relief for Plaintiff's fibromyalgia, knee, and low back pain.  Webb's anxiety and depression appeared stable with medication. (*Id.*).

On February 13, 2012, Plaintiff met with Dr. Magoulias, who noted that she weighed 330 pounds, with a total loss of 70 pounds following her surgery. (Tr. 379).  Dr. Magoulias hoped to stop Percocet after Plaintiff lost additional weight. (Tr. 380).

Plaintiff treated with Dr. Magoulias again on October 12, 2012. (Tr. 1094).  The physician observed that Plaintiff weighed 290 pounds, when she had previously weighed almost 400 pounds.  Webb was able to walk around her home, though she reported that she experienced total body pain in her back, arms, legs, and feet. (*Id.*).  Nevertheless, she did not want to attend her pain management appointment. (Tr. 1095).  Webb indicated that Percocet helped with pain.

She reported body pain from Mediterranean Fever, but she refused a treatment referral, even though Dr. Magoulias told her that Colchicine could help. (*Id.*).

### 2.  Mental impairments

On June 22, 2011, Plaintiff reported to Dr. Magoulias that her anxiety was better, she wanted to decrease her dosage of Valium, she was getting out of the house more, and she regularly attended water aerobics. (Tr. 990).   Plaintiff slept well while on Ambien. (*Id.*).

In June 2011, Dr. Magoulias completed a medical source statement addressing Plaintiff's mental impairments. (Tr. 227-28).   Dr. Magoulias opined that Webb had a "poor," or significantly limited" ability to deal with the public; relate to co-workers; deal with stress; complete a normal workday and workweek without interruptions for psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; socialize; manage funds or schedules; and leave home on her own.   In support of mental limitations, the physician indicated that Plaintiff suffered from anxiety and depression.   The doctor noted that Plaintiff had some memory problems, did not like people, and cried often. (*Id.*).

On September 6, 2011, Plaintiff underwent a mental health assessment with psychologist James Yokley, Ph.D. (Tr. 930-34). Dr. Yokely noted that Webb had no psychiatric hospitalizations.   During a mental status examination, Webb was well groomed; cooperative; oriented to time, person and place; and had clear, normal, and coherent speech.   Additionally, Plaintiff's thought process was logical and organized, with tight association; she denied suicidal or homicidal thoughts; her judgment and insight were fair; her memory was adequate; her attention and concentration were sustained; and her mood was euthymic. Dr. Yokley diagnosed major depressive disorder and an eating disorder, and assigned a GAF score in the range of 61 to 70, indicating mild symptoms. (Tr. 930-34).

A September 22, 2011, treatment note indicated that Plaintiff had cut her Valium dose to twice per day. (Tr. 960).  In December 2011, Webb reported to nurse Franta that her mood had been good. (Tr. 536-37).  The nurse opined that Plaintiff's anxiety and depression appeared to be stable on her medication. (Tr. 537).

On January 11, 2012, state agency reviewing psychologist Mel Zwissler, Ph.D., conducted a review of the record. (Tr. 71-73).  Dr. Zwissler opined that Plaintiff was capable of performing a wide array of tasks in an environment without strict time or production quotas. The psychologist also recommended that Plaintiff should have no more than superficial contact with co-workers, supervisors, and the public. (*Id.*).

On October 17, 2012, Plaintiff reported to Dr. Magoulias that she experienced auditory hallucinations, but Valium and Risperdal helped with depression and anxiety. (Tr. 1094-95).

### III. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2.  The claimant has not engaged in substantial gainful activity since the amended alleged onset date of April 20, 2011.

3.  The claimant has had the following severe impairments: osteoarthritis, obesity, and an affective disorder.

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can stand and/or walk for a  maximum of four hours of a 8-hour workday. She can never climb ladders, ropes or scaffolds. She can perform unlimited balancing, but all other postural maneuvers are occasional. She must avoid all exposure to hazards. She is capable of performing a wide array of tasks in an environment without strict time or production quotas. She can interact on a superficial basis with co-workers, supervisors, and the general public.

9

6.  The claimant is capable of performing past relevant work in phone sales. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7.  The claimant was born on November 3, 1962 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant is subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963) (Tr. 30).

8.  The claimant has a limited education and is able to communicate in English 20 CFR 404.1564 and 416.964) (Tr. 30).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. The claimant has not been under a disability, as defined in the Social Security Act, from April 20, 2011, through the date of this decision.

(Tr. 20-31) (internal citations omitted).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505, 416.905.

## V.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.*

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI.  ANALYSIS

### A.  Whether the ALJ erred in his analysis of treating physician, Dr. Magoulias

Webb maintains that the ALJ erred in failing to give controlling weight to the opinions of her treating physician Dr. Magoulias. Dr. Magoulias served as Plaintiff's primary care physician beginning in December 2010. In June 2011, the physician completed two medical sources statements addressing the degree of Webb's physical and mental limitations.

It is well-established that an ALJ must give special attention to the findings of the claimant's treating sources. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This doctrine, often referred to as the "treating source rule," is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treating relationship with

an individual are best equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2). The rule indicates that opinions from such physicians are entitled to controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Wilson*, 378 F.3d at 544.

When a treating source's opinion is not entitled to controlling weight, the ALJ must determine how much weight to assign to the opinion by considering factors set forth in the governing regulations. 20 C.F.R. §§ 416.927(c)(1)-(6), 404.1527(c)(1)-(6). The regulations also require the ALJ to provide "good reasons" for the weight ultimately assigned to the treating source's opinions that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinions and the reasons for that weight. *See Wilson*, 378 F.3d at 544 (*quoting* S.S.R. 96-2p, 1996 WL 374188, at *5).

In the present case, the ALJ acknowledged Dr. Magoulias's physical and mental medical sources statements and summarized each in her opinion. (Tr. 27-28). The ALJ attributed little weight to the physician's physical findings and no weight to the mental health opinion. (*Id.*). Despite Webb's argument to the contrary, the ALJ provided sufficient good reasons supported by the record to devalue Dr. Magoulias's opinion and comply with the treating source doctrine.

To begin, the ALJ attributed little weight to Dr. Magoulias's opinion regarding physical limitations because it was inconsistent with the record as a whole, which showed that Plaintiff was more functional than Dr. Magoulias opined. (Tr. 27). In particular, the ALJ gave the opinion little weight because it was rendered prior to Webb's gastric bypass surgery and the notable weight loss that Webb experienced thereafter. (*Id.*).

The regulations permit an ALJ to discount a treating physician's opinion when it is inconsistent with the record. 20 C.F.R. §§ 416.927(c), 404.1527(c).  Here, the ALJ's observation of inconsistency is supported by substantial evidence.  Following Plaintiff's December 2011 surgery, her weight loss resulted in various improvements, undermining the extent of the physical limitations Dr. Magoulias recommended.  As the ALJ and Dr. Magoulias noted, Plaintiff weighed 290 pounds by October 2012, when in June 2011, she had weighed almost 400 pounds. (Tr. 26).  The ALJ also highlighted evidence showing that following the procedure, Webb was able to walk without a wheelchair or a cane and had improved stamina. (Tr. 25). Additionally, Percocet relieved Plaintiff's joint and back pain. (*Id.*).  Moreover, Dr. Magoulias hoped to stop Percocet after Webb lost more weight. (Tr. 26).  These positive developments following the gastric bypass surgery undermine the strict limitations Dr. Magoulias assigned months before these changes occurred.

Additionally, the ALJ pointed to evidence from before Plaintiff's surgery that was also inconsistent Dr. Magoulias's strict physical limitations, particularly the doctor's opinion that Plaintiff could never walk or stand during the workday.  For example, the ALJ noted that both of Plaintiff's podiatrists observed that Webb was able to stand and walk, despite her use of a wheelchair on a regular basis. (Tr. 26, 550, 817, 910).  Accordingly, the ALJ correctly concluded that Dr. Magoulias's physical limitations were inconsistent with the record such that they should be afforded little weight.

Webb further takes issue with the ALJ's decision to attribute greater weight to the opinion of state agency reviewing physician Dr. Lewis over that of her treating physician. Plaintiff points out that Dr. Lewis's opinion came only one month after her bypass surgery, and thus could have been rejected for the same reasons that the ALJ discounted Dr. Magoulias's

opinion. Webb emphasizes that Dr. Lewis reviewed the record one year before the ALJ issued her decision, and as a result, Dr. Lewis did not have access to the complete record.  Finally, Plaintiff argues that Dr. Lewis did not point to evidence to support the conclusion that she can stand and walk for a total of four hours during a normal workday.

Social Security Ruling 96-6p explains that "[i]n appropriate circumstances, the opinions from State agency medical . . . consultants may be entitled to greater weight than the opinions of treating or examining sources." S.S.R. 96-6p, 1996 WL 374180, at *3 (July 2, 1996).  For example, the ruling states that this may occur when "the State agency medical . . . consultant's opinion is based on a review of a complete case record that . . . provides more detailed and comprehensive information than what was available to the individual's treating source." Id.

The Sixth Circuit has indicated that the example set forth in the ruling "does not exhaust the range of 'appropriate circumstances' under which a non-treating source's opinion may be entitled to greater weight than that of a treating source. There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record. The opinions need only be 'supported by evidence in the case record.' " Helm v. Comm'r of Soc. Sec. Admin., 405 F. App'x 997, 1002 (6th Cir. 2011) (internal citations omitted). In McGrew v. Comm'r, 343 F. App'x 26, 30-32 (6th Cir. 2009) the Sixth Circuit found an ALJ's reliance on state agency medical opinions' based on an incomplete record was not in error, because the ALJ considered medical examinations that were performed after the state assessments and accounted for changes in the plaintiff's condition in the RFC.

Here, Dr. Lewis had access additional evidence that was not before Dr. Magoulias. Moreover, the ALJ reasonably concluded that unlike Dr. Magoulias's assessment, Dr. Lewis's findings were more consistent with the evidence in the record. (Tr. 26).  When formulating the

14

RFC, the ALJ also accounted for evidence that developed after Dr. Lewis conducted her review. (Tr. 25-26).  As a result, Webb's argument that the ALJ erred in relying on Dr. Lewis's opinion is not well taken.

With regard to Dr. Magoulias's mental health report, the Court finds that the ALJ likewise provided good reasons in support of awarding the opinion no weight. (Tr. 26).  For instance, in the report, the doctor provided little support for the limitations assigned, aside from stating that Webb suffered from anxiety and depression. (*Id.*).  Moreover, the ALJ corrected noted that the limitations assigned by Dr. Magoulias were not supported by her own treatment notes, Dr. Yokley's treatment notes or evaluation, or the record as a whole. (*Id.*).  Such observations are substantially supported.  At various times, Dr. Magoulias's and Nurse Franta's treatment notes showed that Plaintiff's medications helped alleviate anxiety and depression. (Tr. 27, 536-37, 990).  Significantly, Dr. Yokley's mental status examination showed largely normal findings, which do not comport with the notable restrictions Dr. Magoulias opined that Plaintiff would experience in the workplace. (Tr. 27, 933-34).

Lastly, the ALJ wrote that mental health was outside the scope of Dr. Magoulias's specialty.  Webb takes issue with this assessment, arguing that Dr. Magoulias is a primary care physician who was within the bounds of her practice to treat mental health issues, and who was the prescribing doctor for all of her psychiatric medication.

The regulations instruct that generally, more weight is given to the opinion of a specialist about medical issues related to her area of specialty than to the opinion of a source who is not a specialist. 20 C.F.R. §§ 416.927(c)(5), 404.1527(c)(5).  Here, as Plaintiff admits, Dr. Magoulias is not a psychiatrist, supporting the ALJ's decision to devalue the doctor's opinion regarding mental health limitations. Nevertheless, even assuming that the ALJ's reasoning in this regard is

15

flawed, the ALJ provided other independent reasons sufficient to support the analysis of Dr. Magoulias's mental health findings.

Finally, Webb contends that the ALJ erred by failing to address the factors denoted in 20 C.F.R. §§ 416.927(c), 404.1527(c) in justifying the weight attributed to Dr. Magoulias's opinions. But Plaintiff has not identified, and the Court is unaware of, any binding case law demanding an ALJ to specify how she analyzed each of these factors individually. The regulations only require the ALJ to provide "'good reasons . . . for the weight . . . given to the treating source's opinion'—not an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011) (alterations in original). The "good reasons" requirement only demands the ALJ to *consider* the factors provided in the regulations. *Blanchard v. Comm'r of Soc. Sec.*, No. 11-CV-12595, 2012 WL 1453970, at *16-17 (E.D. Mich. Mar. 16, 2012), *report & recommendation adopted* 2012 WL 1432589. While including a thorough assessment of each factor might be helpful in assisting a claimant to better understand the ALJ's decision, so long as the ALJ's opinion clearly conveys why the doctor's opinion was credited or rejected, the ALJ has satisfied his burden. *Francis*, 414 F. App'x at 804.

Here, the ALJ adequately accounted for the factors set out in the regulations, including consistency, supportability, and specialization. The ALJ provided reasonable and well-supported grounds for the decision not to adopt Dr. Magoulias's opinions. (*Id.*). Accordingly, Plaintiff's assignment of error is not well taken.

### B.  Whether Plaintiff's work in phone sales qualifies as "past relevant work"

Webb maintains that the ALJ violated the doctrine of administrative res judicata by finding that her work in phone sales qualified as past relevant work. According to Plaintiff, the ALJ was bound by the 2010 Disability Determination, which listed only babysitting as past

relevant work.  Alternatively, Plaintiff contends that if the ALJ was entitled to reconsider past relevant work, the ALJ's assessment that the phone sales job qualifies is incorrect.

In *Dennard v. Secretary of Health and Human Services*, 907 F.2d 598 (6th Cir. 1990) and *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997) the Sixth Circuit confronted the question of whether res judicata applies against the Commissioner of Social Security on claims which have been previously determined.  The Sixth Circuit in *Dennard* found that where the final decision of the Social Security Administration ("SSA") contains a finding of the demands of a claimant's past relevant work, the SSA may not make a different finding in adjudicating a subsequent disability claim within an adjudicated period arising under the same title of the Act. 907 F.2d at 600.  The *Drummond* court concluded that the Commissioner was bound to a prior residual functional capacity ("RFC") finding, because the Commissioner did not produce substantial new and material evidence showing that the claimant's condition had improved. 126 F.3d at 842-43.  The Court explained that "[t]he burden is on the Commissioner to prove changed circumstances and therefore escape the principles of res judicata." *Id.* at 843.

Following the *Dennard* and *Drummond* decisions, the SSA issued Acquiescence Ruling ("AR") 98-4(6), which explained how the SSA would apply these cases within the Sixth Circuit. It provides in relevant part:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations, or rulings affecting the finding or the method for arriving at the finding.

AR 98-4(6), 1998 WL 283902, at *3 (June 1, 1998).  In essence, the court "will apply collateral estoppel to preclude reconsideration by a subsequent ALJ of factual findings that have already

been decided by a prior ALJ when there are no changed circumstances requiring review." *Brewster v. Barnhart*, 145 F. App'x 542, 546 (6th Cir. 2005). The res judicata principle forecloses reformulation of claimant's RFC as well as alterations to "other findings that are required to be made at a step in the sequential evaluation process." 63 FR 29771-01, 1998 WL 274052 (June 1, 1998); *see also Hearings, Appeals, and Litigation Law Manual* ("HALLEX"), § I-5-4-62, 1999 WL 33615029, at *8-9 (Dec. 30, 1999) (describing some of the factual findings to which administrative res judicata applies).

In the present case, res judicata ought to apply to the past relevant work determination. The Commissioner has not pointed to new material evidence or changed circumstances relating to the telephone sales position.[2] The Commissioner, however, accurately notes that the 2010 Disability Determination included no discussion about whether the phone sales job qualified as past relevant work. (Tr. 51). The prior ALJ discussed Plaintiff's work as a babysitter, but made no mention of phone sales. Plaintiff contends that the previous ALJ implicitly found the phone sales job was not past relevant work by omitting any discussion of it. Yet, to the Court, the ALJ's lack of discussion and express finding as to the phone sales position appears to render res judicata inappropriate.

Whether the ALJ correctly labeled the phone sales job as past relevant work is a more complicated matter. Generally, "past relevant work" is "work that you have done within the past 15 years, that was substantial gainful activity ("SGA"), and that lasted long enough for you to learn to do it." 20 C.F.R. §§ 404.1560(b)(1), 416.960. "Substantial gainful activity" is in turn defined as work that involves "significant physical or mental activities" done for "pay or profit." 20 C.F.R. §§ 404.1572, 461.972. The VE characterized Webb's phones sales job as semi-skilled

---

[2] During the 2013 administrative hearing, Plaintiff testified about her work in telephone sales, which might constitute new evidence. However, the Court does not have access to 2010 administrative transcript in order to determine whether Plaintiff previously expounded on the nature of this work.

with a specific vocational preparation level ("SVP") of 3, meaning that it would require "over 1 month up to and including 3 months" to learn to perform. *Telephone Solicitor*, DOT 299.357-014, 1991 WL 672624 (Jan. 1, 2008).

Plaintiff worked in phone sales during 2004, which falls within 15 years of the 2013 Disability Determination. (Tr. 29, 139, 141, 1170).   It is undisputed that Plaintiff earned a total of $3,786.84. (Tr. 29, 139, 141).  During the administrative hearing, Plaintiff testified that she had difficulty remembering, but could have performed the job for four months. (Tr. 1170).  Based on the foregoing, the ALJ concluded that her $3,786.84 income met SGA levels when she earned $810 per month, working full time, over a 4.5 month period. (Tr. 29, 1170).  The VE testified that Plaintiff would have learned this particular job had she worked in the position for 4.5 months. (Tr. 1187-88).

Plaintiff contends this finding is in error because she initially testified that her work was only part time and only changed her response to full time when the ALJ further questioned her. (Tr. 1170).  Webb also points to a form which she completed as part of her disability application and described the phone sales position. (Tr. 1171). Webb wrote that she earned $10 an hour, working nine hours per day, five days per week. (*Id.*).  Based on the form's information, Plaintiff argues that she would have worked full time for approximately 60 days, or only 2 months, to earn $3,786.84, and therefore would not have adequately learned the job. [3]

Given the lack of evidence regarding the duration and extent of Plaintiff's work in telephone sales, it is difficult for the Court to assess the issue.  Yet, even if the ALJ erred in concluding that the phone sales position qualified as past relevant work, any such error is

---

[3] Plaintiff fails to acknowledge that her testimony that she worked only part-time calls conflicts with her responses on the disability form, which indicates that she worked 45 hours per week and which she now relies on to support her argument.

harmless and does not necessitate remand.  Putting Plaintiff's ability to perform any past work aside, the ALJ went on to find that Plaintiff could also perform work as a clerical assistant and order caller. (Tr. 30).  The VE testified that given Plaintiff's RFC, she could perform these two jobs, which exist in significant numbers in the national economy. (Tr. 30, 1191).  Accordingly, substantial evidence supports the ALJ's ultimate disability determination and remand for the ALJ to reevaluate the past relevant work finding would result in the same outcome.  As the Sixth Circuit has explained, "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005).

Plaintiff argues that she was prejudiced by the ALJ's past relevant work finding because she would otherwise meet the requirements of the Medical Vocational Guidelines or the "Grid." Plaintiff specifically points to Grid Rule 201.10, which directs that a person closely approaching advanced age (i.e., ages 50-54), with limited or less education, whose skills are not transferable, and who is limited to sedentary work, is considered disabled. 20 C.F.R. pt. 404, subpt. P, app. 2, Table 1, Rule 201.10.

Grid Rule 201.10 is inapplicable here, regardless of whether the telephone sales job qualifies as past relevant work.  The ALJ found that Plaintiff was capable of light work. (Tr. 23). Additionally, the ALJ's decision to discount the stricter physical limitations Dr. Magoulias recommended is supported by substantial evidence.  Accordingly, Plaintiff did not meet the requirements of Rule 201.10, regardless of how the phone sales position is characterized.

## VII.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the final decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date:  August 20, 2015.